The **PEOPLE** of the State of
Colorado, Petitioner,

v.

**Mark Edward COLEBY, Respondent.**

No. 00SC416.

Supreme Court of Colorado,
En Banc.

Nov. 13, 2001.

Jeanne M. Smith, District Attorney El Paso County, Diana K. May, Deputy District Attorney, Gordon R. Denison, Deputy District Attorney, Colorado Springs, CO, Attorneys for Petitioner.

David Kaplan, Colorado State Public Defender, Joshua N. Tolini, Deputy State Public Defender, Daniel Zetler, Deputy State Public Defender, Colorado Springs, CO, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

We issued a writ of certiorari to review the district court's judgment in *People v. Coleby,* No. 99CV1893 (Colo. Dist. Ct. April 13, 2000). In *Coleby,* the district court disapproved a county court order that held that both the mental states of "knowingly" and "intentionally" are applicable to the crime of violation of a restraining order under section 18–6–803.5, 6 C.R.S. (1997). Specifically, the district court held that section 18–6–803.5 requires only a culpable mental state of "knowingly."

We granted certiorari to determine the mental state required under the violation of a restraining order statute. We now approve the district court's ruling and hold that the culpable mental state required under section 18–6–803.5 is "knowingly."

## I. FACTS AND PROCEDURAL HISTORY

Defendant was charged with violating a restraining order that prohibited him from contacting his ex-wife or directing another person to contact her. Defendant was personally served with the restraining order on October 16, 1997 by the court clerk. At trial, Defendant did not contest the service of process or claim a lack of actual knowledge of the contents of the order. Rather, Defendant asserted that he did not knowingly or intentionally violate the restraining order. The jury acquitted Defendant after it was instructed, over the prosecution's objection, that the crime of violating a restraining order requires that the defendant have committed the crime both knowingly and intentionally.

On appeal, the district court ruled that the county court erred in finding that section 18–6–803.5 requires the culpable mental states of both "intentionally" and "knowingly," and held that the statute requires only a mental state of "knowingly." *Coleby,* No. 99CV1893, at 2. We granted certiorari to determine the mental state required under section 18–6–803.5.[1]

## II. ANALYSIS

### A. Standard of Review

Statutory construction issues are questions of law. *Hendricks v. People,* 10 P.3d 1231, 1235 (Colo.2000). In reviewing a court's conclusions of law we apply a de novo standard of review and ascertain whether its legal conclusions are supported by sufficient evidence and whether it has applied the correct standard. *People v. Owens,* 969 P.2d 704, 707 (Colo.1999).

### B. Mental State Required Under Section 18–6–803.5

Under the relevant statute, a person commits the crime of violation of a restraining order if: (1) the person engages in conduct prohibited by the restraining order, and (2) the person has been personally served with a copy of the order or "otherwise has acquired from the court actual knowledge of the contents of any such order." § 18–6–803.5(1). The prosecution argues that this statute was enacted as a strict liability crime because the statute sets forth no culpable mental state with respect to the portion of the statute

---

1. We granted certiorari on the following issue: Whether the crime of violation of a restraining order, section 18–6–803.5 6 C.R.S. (1998), requires the culpable mental state of "knowingly" or is a strict liability crime.

concerning the defendant's conduct. We disagree.

Under section 18–1–503(4), 6 C.R.S. (2001), "[w]hen a statute defining an offense prescribes as an element thereof a culpable mental state [for one element], that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears." *See also People v. Trevino*, 826 P.2d 399, 402 (Colo.App.1991) (if a statute expresses or implies a mens rea for one element, that mens rea must be deemed to apply to every element of the offense); *People v. Saiz*, 660 P.2d 2, 6 (Colo.App.1982) (same).

■ Applying section 18–1–503(4), we conclude that even though the first part of section 18–6–803.5(1) concerning the defendant's conduct does not contain explicit language prescribing a required mental state, the mental state of "knowingly" should be applied to it. The statute in effect when these events occurred, section 18–6–803.5(1), 6 C.R.S. (1997), provided:

> A person commits the crime of violation of a restraining order if such person contacts, harasses, injures, intimidates, molests, threatens, or touches any protected person or enters or remains on premises or comes within a specified distance of a protected person or premises, and such conduct is prohibited by a restraining order, after such person has been personally served with any such order or otherwise has acquired from the court actual knowledge of the contents of any such order.

Since the second portion of the statute requires a knowing violation, which is satisfied either implicitly by personal service of the restraining order or explicitly by actual knowledge of the contents of the order, section 18–1–503(4) requires that the mental state of knowingly apply to every element of the crime, "unless an intent to limit its application clearly appears." An examination of the legislative history underlying section 18–6–803.5 reveals no intent on the part of the General Assembly to limit the application of the culpable mental state of "knowingly" to only one element of the offense. Moreover, the words the General Assembly chose to describe the conduct portion of the offense in

section 18–6–803.5 evidence no clear intent to limit the application of the knowledge requirement. Thus, the mental state of "knowingly" applies not only to the second prong of the statute, but also to the first, conduct, prong.

This case is distinguishable from *Gorman v. People*, 19 P.3d 662 (Colo.2000) and *Copeland v. People*, 2 P.3d 1283 (Colo.2000) in which we considered the applicability of section 18–1–503(4). In *Gorman*, we ruled that section 18–1–503(4) was inapplicable to the contributing to the delinquency of a minor statute as the General Assembly did not specify a culpable mental state in the statute. 19 P.3d at 666. We concluded that the culpable mental state of knowingly applies to the act of contributing to the delinquency of a minor, but not to the statute's age element. *Id.* at 665–66. We noted that elements of a particular offense may have differing mens rea requirements, and that the culpable mental state of a statute may speak to conduct, circumstances, result, or any combination thereof, but not necessarily to all three. *Id.* at 666. In addition, in *Copeland*, citing section 18–1–503(4), we held that the General Assembly had evidenced its clear intent not to apply the arson statute's mens rea requirement of "knowingly" or "recklessly" to the statute's endangerment provisions. 2 P.3d at 1287. We relied on the wording of the statute and our prior decision in *People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975) in concluding that the legislature intended to hold the arsonist responsible for the fire's result, whether or not he was aware of or intended the consequences. *Copeland*, 2 P.3d at 1287. These cases are distinguishable from the present case. Unlike the statute in *Gorman*, section 18–6–803.5 prescribes as an element within the statute the culpable mental state of "knowingly" and no intent to limit its application clearly appears. Moreover, unlike the statute in *Copeland*, the legislature evidenced no clear intent to limit the application of the knowledge requirement in section 18–6–803.5.

We hold that the district court properly held that section 18–6–803.5 requires the culpable mental state of "knowingly," and that such mental state applies to all elements of

the crime. Because there is no clear intent to limit the application of the culpable mental state of knowingly to the second portion of the statute, we affirm the district court's order requiring only the mental state of "knowingly."

### III. CONCLUSION

In summary, we hold that section 18–6–803.5 is not a strict liability crime requiring no culpable mental state. Instead, applying section 18–1–503(4), we conclude that the culpable mental state of "knowingly" applies to the first, conduct, element of the crime, as well as to the second element of the statute, which is satisfied either by personal service or actual knowledge, because no clear intent to limit the application of the mental state of knowingly clearly appears.

Accordingly, we approve the ruling of the district court.

Justice COATS dissenting:

Although I agree with the majority and district court that the crime of violation of a restraining order cannot properly be characterized as a strict liability offense, I disagree that section 18–1–503(4), 6 C.R.S. (2001), requires application of the mental state "knowingly" to every element of the crime. Specifically I do not agree that by permitting proof of a defendant's actual knowledge of the contents of the restraining order to substitute for proof of personal service the legislature must have intended to apply a general criminal mens rea to every element of the offense. Because I also believe that our failure at times in the past to clearly articulate and distinguish the constitutional limitations and principles of statutory construction applicable to culpable mental states has led to some confusion in both drafting and construing criminal statutes, I write separately to explain my views.

Initially, however, I must note the necessarily advisory nature of our resolution of this particular question of law, which is accentuated by the unusual appellate history of this particular case. The People petitioned this court for a writ of certiorari to review a holding of the district court, sitting as the court of direct appeal from a county court prosecution. Following the defendant's acquittal of two counts of violating a restraining order, the People appealed to the district court pursuant to section 16–12–102(1), 6 C.R.S. (2001), challenging the county court's elemental instruction permitting the jury to convict only if it found that the defendant committed the prohibited acts "intentionally and knowingly."[1] Although the People expressly conceded in their appeal to the district court that their challenge extended only to the specific intent requirement, having failed at trial to object to the requirement that the acts be committed knowingly, they challenge in this court the district court's conclusions that the offense is not one of strict liability and that the culpable mental state of "knowingly" applies to every element of the offense.

The two separate charges of violating a restraining order arose from communications in several letters sent by the defendant to a friend from jail. Apparently the only prosecution theory to survive the defendant's motion for judgment of acquittal involved an allegation that a remark in one of the letters violated two different restraining orders. After blaming the protected person (the mother of his children) for the defendant's predicament, the letter contained an imperative statement to their mutual friend to wish the mother a Merry Christmas and tell her that the defendant loved her too.

The first restraining order, from an earlier civil case, prohibited the defendant from contacting the protected person, as well as from directing another person to injure, threaten, molest, disturb, interfere with or annoy her. The second order, from an earlier criminal case, also prohibited the defendant from contacting her. The trial court refused to instruct on the no-contact portion of the civil restraining order because it specifically limited its definition of "contact" to telephoning, following, or visiting the plaintiff, of which

---

1. Since acting intentionally necessarily includes acting knowingly, *see* § 18–1–503(3), 6 C.R.S. (2001), conjoining "knowingly" and "intentional-ly" in the instruction was legally superfluous but presumably included for the benefit of the jury.

there was no evidence. The trial court did instruct the jury with regard to violation of the criminal restraining order and the remainder of the civil order; however, it limited the conduct elements of the offenses to committing an act prohibited by the applicable court order intentionally and knowingly.[2] Because the defendant did not contest service of the restraining order in the civil case, and actually stipulated that he was present in court in the criminal case when he was ordered to have no contact with the protected person, the question of service or knowledge of the contents of the orders never became an issue at trial.

I fundamentally disagree with the majority's application of section 18–1–503(4) in this case. That section, much like the provisions of title 2, article 4, of the revised statutes, is a legislatively prescribed rule of statutory construction. I understand it to be the legislature's explanation of the manner in which it intends its of use the four culpable mental states specified in section 501, see also § 18–1–503(1), to be understood. In my view, it indicates that when a statute prescribes as an element of an offense that a defendant act "intentionally," "knowingly," "recklessly," or with "criminal negligence," it means that he must act with that same degree of culpability with regard to every element of the offense, unless a different legislative intent clearly appears. Therefore, if the legislature makes it a crime for someone to "knowingly" do something, it intends that the actor be guilty only if he acts knowingly with regard to all of the conduct and attendant circumstances necessary for the commission of the crime, rather than merely the act or circumstance that immediately follows the word "knowingly." Cf. § 2–4–214, 1 C.R.S. (2001) (rejecting the rule of statutory construction that relative and qualifying words and phrases, where no contrary intention appears, are construed to refer solely to the last antecedent with which they are closely connected). The statute clearly creates a rule explaining the legislature's intent only "[w]hen a statute defining an offense prescribes *as an element thereof* a specified culpable mental state," § 18–6–803.5 (emphasis added), not when it specifically requires knowledge of one particular circumstance or in one particular element. Cf. maj. op. at 424 (" '[w]hen a statute defining an offense prescribes as an element thereof a culpable mental state [for one element]' ").

The crime of violation of a restraining order is atypical not only because it fails to specify a particular culpable mental state that is applicable to all prohibited conduct but because it also fails to comprehensively define the prohibited conduct. The statute proscribes as criminal a list of certain acts (which does not purport to be exhaustive) if, but only if, those acts, or others prohibited in order to protect a person from imminent danger to life or health, are also prohibited in any one of a number of enumerated kinds of court orders, with which the defendant has been personally served. In 1994, when the statute was rewritten in substantially its current form, it did not contain the word "knowledge" at all. See ch. 323, sec. 1, § 18–6–803.5, 1994 Colo. Sess. Laws 2010. A year later, "actual knowledge of the contents of the order" was added back into the statute, not as a separate element but rather as a substitute for demonstrating personal service. Ch. 152, sec. 3, § 18–6–803.5, 1995 Colo. Sess. Laws 567. As written, the statute does not expressly require knowledge of anything for a conviction. By limiting the defendant's required knowledge to one particular element—or as in this case, an alternate way of committing one particular element—rather than prescribing "knowledge" or "knowingly" as a separate element of the offense, I believe that the legislative intent to limit application of the mental state requirement clearly appears,[3] and I would give effect to that intent.

---

2. Although not expressly challenged on appeal, the trial court also instructed the jury that "[a] person may violate a restraining order by use of a third person," apparently without limitation to any particular provision of a restraining order or the statutory requirements for complicity in section 18–1–603, 6 C.R.S. (2001).

3. Even if a statute defining an offense prescribes as an element thereof a culpable mental state, that culpable mental state is not construed to apply to every element of the offense unless an intent to limit its application fails to clearly appear. § 18–6–803.5, 6 C.R.S. (2001).

I, of course, agree with what I understand to be the majority's holding that a defendant may be convicted of the offense upon proof of personal service of a qualifying order, whether or not he has actual knowledge of its contents. *See* maj. op. at 424 ("a knowing violation, which is satisfied either implicitly by personal service of the restraining order or explicitly by actual knowledge of the contents of the order"). An opposite construction would render the provision for personal service superfluous and is clearly rebutted by the sequence of amendments and legislative history. If, however, as the majority reasons, a requirement of acting knowingly applies to every element of the offense, it is difficult to see why that requirement should not also require actual knowledge of the contents of the order, regardless of personal service. A defendant could presumably know that he had been personally served with "any such order," as required by the statute, only if he knew that the order contained the requisite qualifying restrictions.

While I do not understand it to be the majority's intention, I am concerned that its reliance on section 18–1–503(4) is susceptible of an interpretation requiring imputation of a mental state to every element of an offense, no matter where or how it appears in the statute, in the absence of an express statement specifying the elements to which it does not apply. I do not believe such an interpretation was intended by the legislature or that the language of subsection 503(4) can be read so broadly. Nor do I believe that such an interpretation is constitutionally compelled or that it is beyond the authority of the legislature to create a crime of violating a restraining order without a general criminal mens rea.

Despite the general, common-law requirement for the concurrence of an act and a culpable mental state, such a requirement is neither constitutionally nor statutorily mandated. In Colorado, criminal liability may be premised simply upon a voluntary act, *see*

§ 18–1–502, 6 C.R.S. (2001); *People v. Rostad,* 669 P.2d 126 (Colo.1983), and the legislature specifically provides for strict liability crimes. *See* § 18–1–502. The Supreme Court has recognized the validity of offenses of not only strict but even vicarious liability, and has never attempted to define a due process limitation on offenses without culpable mental states. *See Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). We have sanctioned strict liability crimes involving greater exposure to incarceration than the class 2 misdemeanor in this case. *See, e.g., People v. Wilhelm,* 676 P.2d 702, 706 (Colo.1984)(upholding legislature creation of strict liability crime of cruelty to animals—a class 1 misdemeanor, punishable by up to two years in jail). Even with respect to common-law crimes (which this offense clearly is not), the Supreme Court has not required a culpable mental state but has merely held that as a matter of statutory construction, mere silence should not be understood as an attempt to eliminate a common law mental element. *Morissette,* 342 U.S. at 262, 72 S.Ct. 240; *see also United States v. United States Gypsum Co.,* 438 U.S. 422, 437, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *People v. Gross,* 830 P.2d 933, 940 (Colo.1992); *People v. Moore,* 674 P.2d 354, 358 (Colo.1984).[4]

Nevertheless, I would not characterize the violation of a restraining order as a strict liability offense. It clearly does not impose criminal liability for merely violating a restraining order. Even if a defendant lacks actual knowledge that his particular conduct is prohibited, the statute requires that he at least be put on notice, by personal service, of the legal process to which he is subject. Furthermore, the legislature has expressly directed that a culpable mental state may be required, even though not expressly designated in a statute, where the proscribed conduct itself necessarily involves such a culpable mental state. § 18–1–503(2); *see Gorman v. People,* 19 P.3d 662, 665 (Colo.2000) (apply-

---

4. I am aware, but consider insignificant to the resolution of those cases, that we have on a number of occasions involving mere legislative silence about a culpable mental state suggested that a culpable mental state is actually required for statutory offenses that merely codify or have

their origins in common-law crimes. *See, e.g., City of Englewood v. Hammes,* 671 P.2d 947, 953 (Colo.1983); *Bollier v. People,* 635 P.2d 543, 546 (Colo.1981); *People v. Bridges,* 620 P.2d 1, 3 (Colo.1980).

ing section 18–1–503(2) to find that culpable mental state of "knowingly" is necessarily involved, and therefore required, in "inducing, aiding or encouraging someone to violate [a law]," as required for contributing to the delinquency of a minor). The statute prohibits numerous specific acts, many of which necessarily involve some culpable mental state. In the instant case, the prohibited act of directing another person to injure, threaten, or molest the protected person would seem to "necessarily involve," *see* § 18–1–503(2), knowledge of what one is doing, if not an actual intent that the directed person act according to his directions. Similarly, the "contact" of a protected person as prohibited by the statute may well imply not only an awareness of the identity of the person being contacted but also some awareness of the defendant that he is contacting that person. Other acts enumerated in the statute or potentially proscribed as acts prohibited by a restraining order "to protect the protected person from imminent danger to life or health," however, clearly do not "necessarily involve" a culpable mental state.

While a culpable mental state is not required or even to be presumed from mere silence in codifications of other than common-law crimes, criminal conduct must still be defined with sufficient specificity to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited *and* to provide sufficiently explicit standards to avoid arbitrary and discriminatory enforcement, *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). A scienter requirement may mitigate a law's vagueness. *Flipside*, 455 U.S. at 499, 102 S.Ct. 1186. Even very broadly defined conduct is

unlikely to be unconstitutionally vague if criminality ultimately depends upon the actor's intent in acting as he did, *Hoffman*, 455 U.S. at 493, 102 S.Ct. 1186, and culpable mental states have been imputed to ambiguous statutes to avoid doubts about their constitutionality. *See People v. Gross*, 830 P.2d at 937, 940–41; *see also Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). If section 18–6–803.5 were applied in circumstances that would actually make it unconstitutionally vague, a mental state might be imputed or the statute found unconstitutional as applied, but even that possibility would not justify finding a culpable mental state where none was intended.

I would therefore disapprove the district court's imputation of a "knowing" mental state requirement to every element of the offense, and make clear that personal service, without more, is sufficient to put the defendant on notice of the acts prohibited by the restraining order. However, I would not characterize the statute as creating a crime of strict liability but would make clear that the mental culpability required for commission of the offense will depend largely upon the articulation in the restraining order of the prohibited conduct the defendant is charged with committing.

I therefore respectfully dissent.