**The PEOPLE of the State of Colorado,**
Plaintiff–Appellee,

v.

**Jonathan W. LOPEZ, Defendant–**
**Appellant.**

**No. 03CA0241.**

Colorado Court of Appeals,
Div. II.

Dec. 1, 2005.

Rehearing Denied March 9, 2006.*

Certiorari Granted Aug. 14, 2006.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

ROTHENBERG, J.

Defendant, Jonathan W. Lopez, appeals from the judgment entered upon the eighteen-month sentence imposed following a jury verdict finding him guilty of failure to register as a sex offender, second offense. He also appeals the eighteen-month sentence imposed. We reverse and remand for a new trial.

The salient facts are undisputed. In July 2001, Lopez registered as a sex offender with the Montrose County Sheriff's Office. He was informed he would need to register again on or about October 18, 2001, pursuant to the registration statute then in effect.

From August 23 to November 19, 2001, Lopez was serving a ninety-day jail term. While he was incarcerated, he attempted to register as a sex offender, but was informed by agents of the Montrose County Sheriff's Office that they did not allow anyone to register as a sex offender while incarcerated because "it is just ... extra paperwork." He also did not register upon his release, although he claimed he attempted to do so.

## I. Constitutional Challenge

■ Lopez first contends § 18–3–412.5, C.R.S.2005, which requires him to register quarterly as a sex offender, is unconstitutional on its face and as applied because it violates the constitutional prohibition against ex post facto legislation. The People maintain that he failed to raise this issue in the trial court, and in any event, his argument has been rejected by the United States Supreme Court, by other divisions of this court, and by numerous federal and state courts presented with the issue. *See Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); *People v. Stead,* 66 P.3d 117 (Colo.App.2002);

*Jamison v. People,* 988 P.2d 177 (Colo.App. 1999); *see also Kellar v. Fayetteville Police Dep't,* 339 Ark. 274, 281–82, 5 S.W.3d 402, 406 (1999)(observing that "the vast number of federal and state courts confronted with the issue of the validity of sex-offender registration statutes have found the laws constitutional," and listing cases).

We conclude the issue was not properly raised and therefore do not address it.

### II. Sufficiency of the Evidence

■ Lopez contends he is entitled to a judgment of acquittal because he was incarcerated on the date charged in the information and could not register, but the jury was permitted to find him guilty of failure to register as a sex offender based on conduct occurring on a day other than that charged in the information. The People admit Lopez was incarcerated and unable to register on or about the date charged in the information. However, they contend that the offense of failure to register as a sex offender is a "continuing offense," and because there was evidence Lopez failed to register upon his release from jail, the evidence was sufficient to sustain his conviction. We agree with the People that failure to register as a sex offender is a continuing offense and that Lopez is not entitled to acquittal. However, for the reasons discussed below, we order a new trial.

■ In assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

In *Toussie v. United States,* 397 U.S. 112, 134–35, 90 S.Ct. 858, 870–71, 25 L.Ed.2d 156 (1970), Justice White explained the continuing offense doctrine:

The "continuing offense" is hardly a stranger to American jurisprudence. The

concept has been extended to embrace such crimes as embezzlement, conspiracy, bigamy, nuisance, failure to provide support, repeated failure to file reports, failure to register under the Alien Registration Act, failure to notify the local [draft] board of a change in address, and, until [the announcement of this decision], failure to register for the draft. Since the continuing-offense concept too freely applied can lead to tension with the purposes of a statute of limitations, we should undoubtedly approach the task of statutory interpretation with "a presumption against a finding that an offense is a continuing one."

(Footnote omitted; quoting Model Penal Code § 1.07 cmt. (Tent. Draft No. 5, 1956).) *See United States v. Martinez,* 890 F.2d 1088, 1091 (10th Cir.1989)(concluding offense of failure to appear under 18 U.S.C. § 3146 is a continuing one based on "the nature of the failure to appear offense and the legislative history").

Determining whether a particular violation of law constitutes a continuing offense is primarily a question of statutory interpretation. *Toussie v. United States, supra,* 397 U.S. at 134–35, 90 S.Ct. at 870–71.

All six jurisdictions we have found that have addressed the issue whether the failure to register as a sex offender is a continuing offense have held that it is. *See State v. Goldberg,* 819 So.2d 123 (Ala.Crim.App.2001); *State v. Hawkins,* 39 P.3d 1126 (Alaska Ct. App.2002); *State v. Helmer,* 203 Ariz. 309, 53 P.3d 1153 (Ariz.Ct.App.2002); *Wright v. Superior Court,* 15 Cal.4th 521, 63 Cal.Rptr.2d 322, 936 P.2d 101 (1997); *State v. Morse,* 54 N.J. 32, 35, 252 A.2d 723, 725 (1969)(clarifying that "only one conviction may be had with respect to one continuous failure to comply with [the statute]").

The rationale in these cases is very similar. As the court explained in *State v. Goldberg, supra,* 819 So.2d at 127:

Clearly, the Legislature has concluded that sex offenders pose a continuous threat to society. It has also concluded that a registry is necessary to continually monitor their whereabouts for the protection of the public. Therefore, it must have intended

for a violation of [Alabama's sex offender registration statute] to constitute a continuing offense.

The court added:

A defendant does not commit the crime only at the particular moment the obligation arises, but every day it remains unsatisfied. Given the persistent and palpable threat to society sex offenders represent, "the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one."

*State v. Goldberg, supra*, 819 So.2d at 129 (quoting *Toussie, supra*, 397 U.S. at 115, 90 S.Ct. at 860).

We agree with the analyses of these cases and reach the same result. In Colorado, as in the other states, offenders are under a continuing obligation to register. The statute applicable to Lopez requires that he register quarterly and notify authorities of any change of address. We therefore conclude the offense of failure to register as a sex offender, under which Lopez was charged, is a continuing offense and he is not entitled to acquittal.

Our holding is not inconsistent with *People v. Duncan*, 109 P.3d 1044 (Colo.App.2004). In *Duncan*, the division construed the version of the failure to register as a sex offender statute then in effect, and concluded its plain language required an offender to register "either on his or her birthday or within one business day thereafter." *People v. Duncan, supra*, 109 P.3d at 1047.

It was undisputed that the defendant in *Duncan* did not register on his birthday, but there was no evidence that he failed to register on the first business day following his birthday. Accordingly, the division concluded the evidence was insufficient to prove every element of the offense. The issue of whether failure to register as a sex offender was a continuing offense was not addressed in *Duncan*.

### III. Variance

Although Lopez has characterized it as a question involving the sufficiency of the evidence, we conclude his contention that the

prosecution failed to prove beyond a reasonable doubt he failed to register on or about October 23, 2001, is actually a variance argument. We further conclude he is entitled to a new trial on that ground.

As the court explained in *Larkin v. State*, 88 P.3d 153, 154 (Alaska Ct.App.2004):

Larkin seeks a judgment of acquittal, rather than a reversal of his conviction and a retrial, because he argues that the State took him to trial and then failed to prove its case. Specifically, Larkin claims that because of the difference between the date of the offense shown by the trial testimony and the date specified in the indictment, "reasonable people [would have to agree] that the evidence [presented at trial] was insufficient to establish [that] any crime was committed on or about February 1, 2001."

*But this is not truly a "sufficiency of the evidence" argument. Rather, it is a variance argument.* Larkin concedes that the evidence presented at his trial was sufficient to establish that he committed the crime of sexual abuse of a minor. The problem, according to Larkin, is that the evidence showed that the offense was committed ... at least five weeks before the date specified in the indictment. Even though the indictment says "on or about" February 1, 2001, Larkin contends that the phrase "on or about" is not flexible enough to encompass a variance of five weeks.

(Emphasis added.)

We agree with that reasoning and next explain why the variance in Lopez's case requires reversal and remand for a new trial.

■ Generally, a variance does not require reversal. *People v. Adler*, 629 P.2d 569 (Colo.1981). However, a variance between the specific date of the offense as alleged in the information and the date as proved at trial is reversible error if the defendant's ability to defend against the charge was impaired. *People v. Adler, supra; People v. Vasallo–Hernandez*, 939 P.2d 440 (Colo.App. 1995).

In *Vasallo–Hernandez*, the defendant was charged by information with criminal impersonation alleged to have occurred on April

25, 1993. The defendant raised a voluntary intoxication defense against the charge, as indicated in the information, but he was convicted based on conduct occurring on a different date.

A division of this court held the variance required reversal because the defense was based only on the date charged in the information, yet the jury was urged to convict based on conduct occurring on a different date. *Vasallo–Hernandez, supra.*

■ Similarly, here, Lopez was charged with failing to register as a convicted sex offender "on or about October 23, 2001." Although we have concluded the offense is a continuing one, Lopez was given no notice he could be convicted for his failure to register on any date other than the one contained in the information.

Relying on the information, and proceeding pro se, he argued to the jury that he could not physically register on that date because he was in jail and jail officials did not allow him to do so. In her closing argument, the prosecutor conceded that on or about October 23, 2001 Lopez made an effort to register while incarcerated. In addition to Lopez's admission that he was not registered on October 23, 2001, the prosecutor elicited another admission from Lopez that he did not register after his release from jail on November 19, 2001. Nevertheless, Lopez claimed he had a valid reason for not doing so and focused his defense on the date stated in the information.

In closing, the prosecutor stressed the fact that Lopez failed to register when he was released from jail on November 19, and that he was still not registered at the time of the trial. She urged the jury to convict on that basis.

During the jury deliberations, the jury expressed confusion regarding its ability to consider Lopez's conduct on a day other than that charged in the information. In a note, the jury asked the court whether Lopez was "being charged on or about October 23, 2001, as per instruction No. 2, or ... being charged with failure to register as a sex offender, second offense, on [the] verdict form," which did not specify a date. Instruc-

tion No. 2 stated: "The defendant ... is charged with committing the crime of Failure to Register as a Sex Offender/Second Offense, on or about October 23, 2001 ...."

The court instructed the jurors that the verdict ·form reflected their verdict on the charge contained in instruction No. 2. The jury then returned a guilty verdict.

As in *Vasallo–Hernandez,* we conclude the evidence of Lopez's conduct on occasions other than the day charged in the information impaired his ability to defend against the charge, and prejudiced him in preparing and presenting his defense. Under these circumstances, we therefore conclude that the variance constituted reversible error and that Lopez is entitled to a new trial.

On remand, the court shall require that the prosecution, if it intends to rely on the continuing offense doctrine and not rely on or about the date specified in the information, give notice to the court and Lopez of the date or dates on which he allegedly failed to register. The jury should also be instructed accordingly.

## IV. Culpable Mental State Required

■ Because it will arise on remand when the trial court instructs the next jury regarding the elements of the offense, we address Lopez's contention that the culpable mental state of "knowingly" is required for the commission of the offense of failure to register as a sex offender pursuant to § 18–3–412.5, and that the trial erred in failing to so instruct the jury. Lopez concedes that the statute does not expressly designate a culpable mental state, but he maintains that one is nevertheless required for commission of the offense. The People argue that failure to register as a sex offender is a strict liability offense. We agree with Lopez and hold that the mental state of "knowingly" is an element of the offense.

In *People v. Gross,* 830 P.2d 933 (Colo. 1992), the supreme court rejected the People's contention that possession of a weapon by a previous offender was a strict liability offense because the statute was silent on the question of mens rea. The court stated:

Because a crime ordinarily requires the conjunction of an act and a culpable mental state, a court should not construe legislative silence on the element of intent in a criminal statute as an indication that no culpable mental state is required. Rather, the requisite mental state may be implied from the statute.

*People v. Gross, supra,* 830 P.2d at 940 (citations omitted); *see* § 18–1–503, C.R.S.2005 (discussing construction of statutes with respect to culpability requirements).

The court relied, inter alia, on *Morissette v. United States,* 342 U.S. 246, 250–52, 72 S.Ct. 240, 243–44, 96 L.Ed. 288 (1952), and *People v. Tenorio,* 197 Colo. 137, 139, 590 P.2d 952, 953 (1979)(holding that possession of a revolver by a prior convicted felon requires the culpable mental state of "knowingly"). *See also People v. Coleby,* 34 P.3d 422 (Colo.2001) (rejecting People's argument that offense of violating a restraining order was a strict liability crime); *Gorman v. People,* 19 P.3d 662 (Colo.2000)(holding that the culpable mental state of "knowingly" applies to the *act* of contributing to the delinquency of a minor, but not to the *age* element).

Similarly, in *People v. Moore,* 674 P.2d 354 (Colo.1984), the court, construing an earlier version of the statute, addressed whether the mental state of knowingly was implied by the language of the counterfeit controlled substances statute. The statute was silent regarding the required mens rea. The court stated:

> We conclude that the mental state "knowingly" is implied by the counterfeit controlled substances statute and is required for a conviction of sale or distribution of counterfeit controlled substances or the possession of such substances with the intent to sell or distribute them. The People admit this requirement.

*People v. Moore, supra,* 674 P.2d at 358 (citations omitted).

The People point to several instances in which the General Assembly has created strict liability offenses. However, the penalties for those offenses have been relatively minor, compared to the class five felony here of which Lopez was charged and convicted. *See Colo. Dog Fanciers, Inc. v. City & County of Denver,* 820 P.2d 644 (Colo.1991) (Denver ordinance banning and regulating pit bulls was strict liability ordinance); *People v. Wilson,* 972 P.2d 701 (Colo.App.1998) (holding that misdemeanor offense of prohibited use of a weapon while intoxicated under § 18–12–106(1)(d), C.R.S.2005, is a strict liability offense).

In *People v. Manzo,* 114 P.3d 78 (Colo. App.2005) (*cert. granted* June 6, 2005, 2005 WL 1323316 (Colo.2006)), a majority of a division of this court held that the offense of leaving the scene of an accident involving bodily injury, a class five felony, included the mental state of "knowingly."

> Factors that may be considered in determining whether the legislature intended to impose liability without fault, or instead, meant to require fault though it failed to "spell it out clearly," include: (1) the legislative history; (2) guidance in some other statute; and (3) the severity of the punishment of the crime. "Other things being equal, the greater the possible punishment, the more likely some fault is required." 1 W. LaFave, *Substantive Criminal Law* § 5.5(a), at 384 (2d ed. 2003)....
>
> The offense of which defendant was convicted here is a class 5 felony. In our view, the fact that the offense is a felony and exposes the offender to a concomitantly severe punishment indicates that a culpable mental state must have been intended by the General Assembly. We will not lightly assume that the legislature intended to subject conduct to serious criminal penalties without requiring a culpable mental state. *See People v. Sequin,* 199 Colo. 381, 386, 609 P.2d 622, 625 (1980); *People v. Washburn,* 197 Colo. 419, 422, 593 P.2d 962, 964 (1979) (holding that a culpable mental state was most likely constitutionally mandated if a criminal statute was to carry severe penalties); *see also People v. Ellison,* 14 P.3d 1034, 1037–38 (Colo.2000) (strict liability public welfare crimes are distinguishable from common law crimes in part because of the nature and severity of punishment).

*People v. Manzo, supra,* 114 P.3d at 81.

We acknowledge that in *People v. Rostad,* 669 P.2d 126 (Colo.1983), the supreme court

held the legislature concluded the defendant could be convicted of vehicular homicide, a class three felony, based on the defendant's voluntary conduct and did not require a culpable mental state. *People v. Manzo, supra,* 114 P.3d at 83 (Russel, J., dissenting).

However, in the text of the vehicular homicide statute, the General Assembly has expressly stated its intent that the offense be a strict liability crime. *See* §§ 18–3–106, 18–3–205, C.R.S.2005 (providing that vehicular homicides and vehicular assaults are strict liability crimes); *see also* § 18–13–122(2)(a), C.R.S.2005 (providing that illegal possession or consumption of alcohol by an underage person is a strict liability offense). Here, in contrast, the legislature did not state any such intent in the text of the failure to register as a sex offender statute.

Other states that have addressed this issue have reached differing results, probably due to the differing language contained in the various state statutes that define the offense of failure to register as a sex offender.

For example, some state statutes expressly provide for a mental element. *See Dailey v. State,* 65 P.3d 891, 895 (Alaska Ct.App. 2003)("The culpable mental state that applies to this element of the offense is 'knowingly.' But ... the State also had to prove a second culpable mental state: that [the defendant] was aware of the circumstances that triggered his duty to act."); *State v. Casada,* 825 N.E.2d 936, 938 (Ind.Ct.App.2005)(statute requires that the defendant act "knowingly or intentionally"). *See also People v. Barker,* 34 Cal.4th 345, 18 Cal.Rptr.3d 260, 96 P.3d 507 (2004)(holding that forgetting to register was not a defense to the crime of willful failure to register as sex offender).

In other states, a mental element is contained in part of the statute. In *State v. Knowels,* 643 N.W.2d 20, 22 (N.D.2002), the registration statute, N.D. Cent.Code § 12.1–32–15(7), provided:

An individual required to register under this section who violates this section is guilty of a class A misdemeanor. A court may not relieve an individual, other than a juvenile, who *willfully violates* this section from serving a term of at least ninety days in jail and completing probation of one

year. An individual who violates this section who previously has pled guilty or been found guilty of violating this section is guilty of a class C felony.

The trial court in *Knowels* interpreted the statute as a strict liability offense, with the "willfully violates" language applicable only when imposing sentence. But the Supreme Court of North Dakota rejected that interpretation and concluded the failure to register as a sex offender is not a strict liability offense, and the requisite culpable mental state is "willfully." *State v. Knowels, supra,* 643 N.W.2d at 24.

Still other state statutes, like ours, are silent regarding a mens rea requirement. *See Varnes v. State,* 63 S.W.3d 824, 832 (Tex.App.2001) (acknowledging that the sex offender registration statute does not expressly require proof of a mental state, and observing that "[t]he Texas courts which have reviewed other convictions ... for sufficiency have treated the *mens rea* requirement in the indictments or charges as going to the actual knowledge of the defendant's duty to register"). *But see Quinn v. State,* 751 So.2d 627 (Fla.Dist.Ct.App.1999)(rejecting the defendant's argument that Florida statute establishing the offense of failure to register as a sex offender was facially unconstitutional because it fails to contain a scienter or guilty knowledge element); *People v. Patterson,* 185 Misc.2d 519, 526, 708 N.Y.S.2d 815, 821 (N.Y.Crim.Ct.2000)(concluding misdemeanor offense of failure to register as a sex offender is a strict liability crime, but a defendant must be given the statutorily mandated notice of his or her duty to register as a sex offender); *State v. White,* 162 N.C.App. 183, 188, 590 S.E.2d 448, 452 (2004)(statute was silent regarding mens rea, but legislative history of the state's failure to register as a sex offender statute "confirms that the legislature intended to create a strict liability offense").

Given the admonition in *People v. Gross, supra,* 830 P.2d at 940, that "a crime ordinarily requires the conjunction of an act and a culpable mental state, [and that] a court should not construe legislative silence on the element of intent in a criminal statute as an

indication that no culpable mental state is required," and given the seriousness of the felony charged, we conclude the legislature's silence on the element of intent in the sex offender registration statute does not indicate that no culpable mental state is required.

We therefore conclude the failure to register as a sex offender is not a strict liability offense but includes the mental state of "knowingly." *See People v. Gross, supra; People v. Tenorio, supra.* On remand, the trial court is directed to instruct the jury that the People must prove the element of "knowingly" beyond a reasonable doubt before Lopez may be convicted of this offense.

On remand, the trial court should reconsider Lopez's waiver of counsel. His remaining arguments were not properly preserved or are unlikely to recur on retrial.

The judgment and sentence are reversed, and the case is remanded for a new trial consistent with the views expressed in this opinion.

TAUBMAN, J., concurs.

RUSSEL, J., concurs in part and dissents in part.

Judge RUSSEL concurring in part and dissenting in part.

I concur in Parts I–III of the majority's opinion. I disagree with Part IV because I do not think that this particular offense requires proof of general intent. I write separately to explain why.

### I. Statutory Language

I begin, as I must, with the plain language of the governing statute. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). Jonathan W. Lopez was charged with failing to register as a sex offender under Colo. Sess. Laws 1998, ch. 139, § 18–3–412.5(4)(a)(I) at 393 (now codified as § 18–3–412.5(1)(a), C.R.S.2005). As set forth in the former § 18–3–412.5(4)(a)(I), this offense contains no culpable mental state:

> (4)(a) Any person who is required to register pursuant to subsection (1) of this section and who commits any of the acts specified in this paragraph (a) commits the offense of failure to register as a sex offender:
>
> (I) Failure to register pursuant to this section . . . .

What are we to make of the fact that the statute contains no culpable mental state? Quoting *People v. Gross,* 830 P.2d 933, 940 (Colo.1992), and *People v. Moore,* 674 P.2d 354, 358 (Colo.1984), the majority relies on the principle that "legislative silence" cannot be construed as evidence of intent to dispense with proof of a culpable mental state.

Although I accept the principle articulated in *Gross* and *Moore,* I do not agree that it applies here. In the context of the offense at issue, the absence of a culpable mental state is significant.

### A. Statute on Implied Culpability

The principle articulated in *Gross* and *Moore* clearly applies when the proscribed conduct necessarily involves a culpable mental state. In such situations, courts will not construe the absence of an express mental state requirement as evidence of intent to create a strict liability offense. Instead, under § 18–1–503(2), C.R.S.2005, courts will infer a culpable mental state element. *See People v. Gross, supra,* 830 P.2d at 940 (citing § 18–1–503(2)); *People v. Moore, supra,* 674 P.2d at 358 (same).

Section 18–1–503(2) does not apply here because the proscribed conduct—failing to register—does not necessarily involve general intent. For example, a sex offender who must register on his birthday may fail to register "unknowingly" if he is unaware that his birthday has arrived. *See* § 18–1–105(6), C.R.S.2005 (a person acts "knowingly" with respect to a circumstance when he or she is aware that such circumstance exists).

### B. Common Law Offense vs. Regulatory Offense

The principle articulated in *Gross* and *Moore* also applies if the offense is a traditional crime that has its origins in the common law. *See United States v. United States Gypsum Co.,* 438 U.S. 422, 437, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978); *People v. Wash-*

*burn,* 197 Colo. 419, 422, 593 P.2d 962, 964 (1979). For these kinds of offenses, courts require "some indication of [legislative] intent, express or implied, to dispense with *mens rea* as an element." *Staples v. United States,* 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994).

Here, we are in a different realm. Failure to register as a sex offender is not a traditional crime rooted in the common law; it is a modern regulatory offense created by the legislature. *See Jamison v. People,* 988 P.2d 177, 180 (Colo.App.1999) (discussing the regulatory purpose of sex offender registration). Thus, instead of discounting the absence of a culpable mental state as mere silence, we may consider whether it "should be interpreted as dispensing with conventional *mens rea* requirements." *Staples v. United States, supra,* 511 U.S. at 607, 114 S.Ct. at 1798.

### C. Strict Liability Offenses

The legislature has instructed us that an offense is one of strict liability if it is premised on nothing more than a voluntary act or omission:

> The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If that conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of "strict liability." If a culpable mental state on the part of the actor is required with respect to any material element of an offense, the offense is one of "mental culpability."

Section 18–1–502, C.R.S.2005.

Here, the offense plainly requires proof of nothing more than the failure to perform an act that is affirmatively required by law. Thus, under § 18–1–502, we should view the governing statutory language as evidence of an intent to create a strict liability offense.

### II. Statutory History

The statutory history provides additional evidence of the intent to create a strict liability offense. It suggests that the legislature purposely omitted a culpable mental state from the provision at issue.

In 1991, when it created the offense of failing to register as a sex offender, the legislature described two ways of violating the statute. Neither of these required proof of a culpable mental state:

> Any person who fails to register pursuant to subsections (1) and (2) of this section, or any person who submits a registration form containing false information, commits the offense of failure to register as a sex offender against children. Failure to register as a sex offender against children is a class 2 misdemeanor. Any second or subsequent offense is a class 6 felony.

Colo. Sess. Laws 1991, ch. 69, § 18–3–412.5(3) at 394 (now codified with amendments as § 18–3–412.5(1)(a) & (b), C.R.S. 2005).

Since its enactment, § 18–3–412.5 has been amended ten times. Yet the legislature has never added the word "knowingly" to the text at issue. This is significant, particularly because the legislature included a culpable mental state in some amendments:

- In 1999, the legislature broadened the offense to include the act of "[k]nowingly providing false information to department of corrections personnel or department of human services personnel concerning the address where the person plans to reside upon release." Colo. Sess. Laws 1999, ch. 286, § 18–3–412.5(4)(a)(III.5) at 1151 (now codified with amendments as § 18–3–412.5(1)(e), C.R.S.2005).

- In 2002, the legislature again broadened the offense to include "knowingly providing false information to a probation department employee, to a community corrections administrator or his or her designee, or to a judge or magistrate when receiving notice ... of the duty to register." *See* Colo. Sess. Laws 2002, ch. 297, § 18–3–412.5(1)(c) at 1179.

It therefore appears that the legislature chose to require proof of culpability for certain acts and to dispense with this requirement for other types of violations, including the one at issue. *See People v. Wilson,* 972

P.2d 701, 703–04 (Colo.App.1998) (when the legislature added subsections that required a culpable mental state, it did not add a mental state to the existing subsection; this suggests that the legislature intended the existing subsection to describe a strict liability offense).

### III. Constitutional Avoidance

If the absence of a culpable mental state creates serious concerns about the statute's constitutionality, courts may select a plausible interpretation that avoids the constitutional question. *Clark v. Martinez,* 543 U.S. 371, 380–81, 125 S.Ct. 716, 724, 160 L.Ed.2d 734 (2005); *People v. Zapotocky,* 869 P.2d 1234, 1240 (Colo.1994).

Here, it is unnecessary to "read in" a culpable mental state under the canon of constitutional avoidance. There is no serious doubt about the constitutionality of this statute, even if it is interpreted as a strict liability offense.

### A. Due Process Limits

Although the United States Supreme Court has never defined a due process limit on offenses that lack culpable mental states, *see Morissette v. United States,* 342 U.S. 246, 260, 72 S.Ct. 240, 248, 96 L.Ed. 288 (1952), there is no serious doubt that a state legislature may create an offense that carries the exposure of a class 5 felony without requiring proof of a culpable mental state. *See People v. Rostad,* 669 P.2d 126 (Colo.1983) (liability for vehicular homicide—currently a class 3 felony under § 18–3–106(1)(b)(I), C.R.S. 2005—premised solely on the defendant's voluntary conduct of operating a motor vehicle while intoxicated). This is especially true when, as here, the penalty is for a *second* offense. *See* Colo. Sess. Laws 2001, ch. 176, § 18–3–412.5(4)(b)(I) at 567 (now codified with amendments as § 18–3–412.5(2)(a), C.R.S.2005).

### B. Notice of Duty to Register

The Colorado Sex Offender Registration Act requires that sex offenders receive notice of the duty to register. *See* §§ 16–22–105 to 16–22–107, C.R.S.2005. The notice provisions ensure that failure-to-register offenses may be prosecuted without violating the due process rule announced in *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). Thus, the provisions alleviate doubt about the facial constitutionality of a statute that creates a strict liability offense of failure to register as a sex offender. *See State v. Bryant,* 359 N.C. 554, 614 S.E.2d 479, 486 (2005).

If a particular sex offender does not receive notice of the duty to register, he may bring an individual challenge under *Lambert,* showing (1) his conduct was wholly passive, and (2) there were no circumstances that should have alerted him to the consequences of failing to register. *See State v. Bryant, supra,* 614 S.E.2d at 488; *see also United States v. Denis,* 297 F.3d 25, 29 (1st Cir. 2002).

### IV. Policy Considerations

The offense of failure to register as a sex offender has an obvious purpose: to encourage strict compliance with Colorado's sex offender registration laws. The majority's interpretation may undermine this purpose by allowing sex offenders to interpose new defenses to enforcement.

One such defense will take the form of the assertion: "I forgot." Under the majority's interpretation, this assertion (if believed) would defeat proof that a sex offender "knowingly" failed to register.

California courts have negated the "I forgot" defense, not because it is logically irrelevant, but because it would eviscerate that state's regulatory scheme and thus could not have been intended by the legislature. *See People v. Barker,* 34 Cal.4th 345, 18 Cal. Rptr.3d 260, 96 P.3d 507 (2004) ("I forgot" is not a defense even though the statute requires proof of a "willful" failure to register).

Colorado courts need not address the "I forgot" defense. Instead, we should recognize that the legislature intended to create a strict liability offense when it omitted a culpable mental state from the provision at issue.

For these reasons, I respectfully dissent from Part IV of the majority's opinion.